IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARNOLD JOYNER (#N31385), ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 14-cv-02331 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| MICHAEL MAGANA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Arnold Joyner, a prisoner currently incarcerated at Dixon Correctional Center, has brought this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his convictions from the Circuit Court of Cook County for aggravated robbery, attempted escape, and escape. Joyner raises two arguments in his petition: first, he claims that he did not receive a prompt probable cause hearing following his warrantless arrest in violation of *Gerstein v. Pugh*, 420 U.S. 103 (1975); and second, he contends that he was brought before eyewitnesses for identification following his arrest without the presence of counsel. As explained below, the Court denies the petition on its merits and declines to issue a certificate of appealability.

BACKGROUND

State court factual findings are afforded a presumption of correctness, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Joyner has not done so here. This Court accordingly draws the following factual history from the state court record. (Dkt. No. 14.)[1]

---

[1] The exhibit listing for the state court materials submitted by Respondent Michael Magana in support of his response states that Exhibit A is *Illinois v. Joyner*, No. 1-12-2932 (Ill. App. Ct. Sept. 13, 2013). (Dkt.

On May 23, 2006, Joyner entered a negotiated guilty plea covering four separate criminal cases. (Dkt. No. 14-2 at 38.) Joyner agreed to the factual basis for each crime during the guilty plea hearing.

First, in *Illinois v. Joyner*, No. 04 CR 26513 (Circuit Court of Cook County), the first of two aggravated robbery cases, the evidence showed that on October 17, 2004, Joyner entered a juice bar in downtown Chicago shortly before 11:00 a.m. (Dkt. No. 14-4 at 26.) He told the workers there that he was armed with a gun and demanded the money from the cash register. (*Id.*) He fled with $354 dollars. (*Id.*) A police officer arrested Joyner while he was fleeing the scene in a taxi. (*Id.*) The money was recovered, and Joyner was taken back to the crime scene were two employees identified him as the offender. (*Id.* at 26–27.)

Next, in *Illinois v. Joyner*, No. 04 CR 26514 (Circuit Court of Cook County), Joyner's second aggravated robbery case, Joyner entered into a Subway sandwich shop in downtown Chicago at approximately 5:20 p.m. on October 11, 2002—six days before the juice bar robbery. (Dkt. No. 14-4 at 27.) He told the worker he was armed with a gun, and the worker gave him $485 from the cash register. (*Id.*) The worker called the police after Joyner fled, but he was not immediately apprehended. (*Id.*) After Joyner was arrested for the juice bar robbery, the Subway worker identified Joyner as his assailant. (*Id.*)

Third, in *Illinois v. Joyner*, No. 06 CR 2225 (Circuit Court of Cook County), the attempted escape case, Joyner was in the custody of the Cook County Sheriff awaiting trial. (Dkt. No. 14-4 at 28.) He was with a group of inmates in a holding area. (*Id.*) The deputy sheriff

---

No. 14 at 1.) However, the submitted exhibit actually consists of an opinion from *Illinois v. Gater*, No. 2014 IL App (1st) 101982-U (Ill. App. Ct. June 30, 2014), an unrelated case. Fortunately, the *Joyner* case referenced by Respondent's Exhibit A is available in the state court materials. (Dkt. No. 14-2 at 38.)

overseeing the inmate group was processing paperwork for transport of other detainees. (*Id.*) While this was occurring, Joyner walked away from the area into an empty cell and then to a different part of the lockup without authorization. (*Id.*)

Finally, in *Illinois v. Joyner*, No. 06 C 7094 (Circuit Court of Cook County), the escape case, Joyner was in the custody of the Cook County Sheriff awaiting trial. (Dkt. No. 14-4 at 28.) He was at the Cook County criminal courts building at 2600 South California in Chicago for a court hearing. (*Id.*) Joyner left the holding area and went to the snack shop on the first floor. (*Id.*) He was wearing his Cook County Jail Department of Corrections uniform while in the snack shop. (*Id.*) A sheriff's deputy in the courthouse observed Joyner and arrested him. (*Id.*)

Following his guilty pleas, Joyner was sentenced to a total of 42 years of imprisonment. (Dkt. No. 14-2 at 38–39.) He subsequently filed a motion to reduce his sentence, which was denied on June 29, 2006. (Dkt. No. 14-3 at 77–83.) He did not bring a direct appeal. On June 26, 2007, Joyner brought a combined *pro se* postconviction petition and motion for judgment from relief.[2] (Dkt. No.14-3 at 150.) The trial court denied the motion on July 6, 2007. (Dkt. No. 14-3 at 159.) Joyner did not appeal that denial either.

Then, on June 29, 2011, Joyner filed a petition for relief from judgment arguing that he was denied a prompt probable cause hearing after his arrest and that his trial attorney was ineffective for failing to raise the issue. (Dkt. No. 14-2 at 39.) Three months prior to filing the petition for relief from judgment, Joyner received a $2,844.30 check through the class action settlement in *Dunn v. City of Chicago*, No. 04 C 6804 (N.D. Ill.). (Dkt. No. 14-2 at 7.) Joyner

---

[2] There is no proof of service, so the Court cannot apply the prison mailbox rule for the filing. Regardless, the issue is not outcome determinative so the Court will use June 26, 2007—the date it was filed-stamped by the state court.

3

qualified for the *Dunn* class because he was arrested by the Chicago Police Department on suspicion of a felony without an arrest warrant and detained in excess of 18 hours without a judicial probable cause hearing sometime during the period from March 15, 1999 to February 10, 2008. *Dunn v. City of Chicago*, 231 F.R.D. 367, 370 (N.D. Ill. 2005); (Dkt. No. 14-2 at 4.)

On February 14, 2012, while the motion for relief from judgment was pending before the state court, Joyner filed a motion for a writ of habeas corpus in the state court. (Dkt. No. 14-2 at 39.) The trial court denied both the motion for relief from judgment and the motion for a writ of habeas corpus. (Dkt. No. 14-2 at 39.) Joyner appealed, but the denial of both motions was affirmed following the filing of a motion under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), by his appointed appellate counsel stating that there were no nonfrivolous grounds for appeal. (Dkt. No. 14-2 at 40.) Joyner's petition for leave to appeal was denied by the Supreme Court of Illinois, ending his state court proceedings. *Illinois v. Joyner*, No. 117057, 3 N.E.3d 799 (Ill. Jan. 29, 2014) (Table).

Joyner subsequently filed the present habeas corpus petition on March 19, 2014. (Dkt. No. 1 at 9.) The Court issued a show cause order explaining that the petition appeared to be untimely under the one-year statute of limitations, 28 U.S.C. § 2244(d). (Dkt. No. 5 at 1.) Joyner responded to the order by arguing that the limitations period should be tolled due to his mental illness. (Dkt. No. 11 at 1.) In light of Joyner's allegations, the Court concluded that it could not resolve the statute of limitations issue at the outset of the case, discharged the show cause order, and ordered the parties to brief the habeas corpus petition. *Id*. The matter is now fully briefed for resolution by the Court.

4

**DISCUSSION**

Joyner alleges in the instant habeas corpus petition both that he did not receive a prompt probable cause hearing following his warrantless arrest in violation of *Gerstein v. Pugh*, 420 U.S. 103 (1975), and that he was improperly presented to eyewitnesses for identification without the presence of counsel. The Respondent counters that both claims are meritless and untimely, and further that the counsel claim is also procedurally defaulted. As an initial matter, the Court agrees with the Respondent that it is best to first address the merits arguments before the statute of limitations issue, as the statute of limitations is significantly more complex. *See Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013) (instructing that a district court has discretion to resolve the merits issues first when they are "easy" and the statute of limitations questions are "hard" because there is no required priority in resolving issues that do not implicate the Court's subject-matter jurisdiction). And so that is the manner in which the Court will proceed.

I. **Merits of Joyner's Claims**

A. **Claim One**

Joyner contends that he was arrested without a warrant on October 17, 2004, following the juice bar robbery. (Dkt. No. 1 at 5.) He became ill at the police station and was hospitalized until he was discharged four days later on October 21. (*Id.*) He was then transferred to the Cook County Jail, where he claims he remained detained without being presented before a judge for 23 days. (*Id.* at 5–6.) Joyner argues that this delay violated his Fourth Amendment right to a prompt probable cause determination by a judicial officer under *Gerstein v. Pugh*, 420 U.S. 103 (1975).

Joyner's claim is meritless for three distinct reasons. First, the claim is barred under *Stone v. Powell*, 428 U.S. 465 (1976). The Court cannot consider the merits of a Fourth Amendment

claim in a habeas corpus proceeding when the state court provided a full and fair hearing on the issue. *Stone*, 428 U.S. at 494; *Monroe v. Davis*, 712 F.3d 1106, 1112–13 (7th Cir. 2013). Here, Joyner received a full and fair hearing of the issue as it was adjudicated by the state courts in his petition for relief from judgment proceedings. *Stone* thus bars his claim. Second, *Gerstein* itself prohibits this claim. "[A]lthough a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119 (citations omitted); *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) ("[A]n arrest without probable cause violates the Fourth Amendment but does not imply the invalidity of a conviction, because courts do not 'suppress the body' of the accused."). While the alleged lack of a timely probable cause hearing may support a claim for damages, it is insufficient grounds to vacate a conviction. Finally, Joyner relies upon the *Dunn* settlement for support that he is entitled to relief. But the parties agreed in *Dunn*, that "the Settlement Agreement shall not be deemed to be an admission of liability, or of unconstitutional or illegal conduct . . . ." *Dunn*, No. 04 C 6804, Dkt. No. 356 at 4. That Joyner received a cash payment as part of the *Dunn* class settlement is of no moment as there was no liability determination in that case.

For all of these reasons, Claim One must be denied.

### B. Claim Two

Following his arrest on October 17, 2004 for the juice bar robbery, Joyner was identified by employees from the juice bar as well as by the Subway worker from the robbery that occurred six days earlier. Joyner argues that he was denied the presence of counsel when compelled to participate in the identification procedures following his arrest. This claim, however, is

procedurally defaulted. Joyner was required to exhaust his claim through all levels of state court review before bringing the claim in a federal habeas corpus petition. *Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018). Yet he did not raise the claim in the state courts as required, thus resulting in the procedural default.

Joyner cannot excuse his default based on either cause and prejudice or a fundamental miscarriage of justice. Examples of cause are: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or, (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). The record does not suggest any possible grounds to demonstrate cause and prejudice. Joyner also fails to satisfy the fundamental miscarriage of justice exception. To satisfy this exception, Joyner has the burden of demonstrating actual innocence through new, reliable evidence. *McQuiggins v. Perkins*, 133 S. Ct. 1924, 1928 (2013). Yet here, Joyner presents no new evidence and the evidence of his guilt is overwhelming: he was arrested fleeing the scene of one robbery, eyewitnesses identified him as the offender in both robberies, and he was captured and returned to custody during his attempted escape and escape cases. Joyner admitted the facts of his crimes during his guilty plea and makes no showing here of actual innocence. In short, the claim is procedurally defaulted and Joyner cannot excuse his default.

The claim is also meritless. The Sixth Amendment right to counsel attaches when the government instigates "'adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Thompkins v. Pfister*, 698 F.3d 976, 984 (7th Cir. 2012) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). "[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge

7

against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Rothgery v. Gillespie County, Tex.*, 554 U.S. 191, 213 (2008). Joyner, however, complains about eyewitnesses identifying him immediately following his arrest prior to any presentment before a judge. There was no Sixth Amendment violation, as his right to counsel had not yet attached at the time of the identifications.

## II.  Statute of Limitations

In addition to being meritless, Joyner's habeas corpus petition is also untimely under the one-year statute of limitations. *See* 28 U.S.C. § 2244(d). The relevant limitations period begins upon: (A) the completion of direct appeal or expiration of the time period for pursuing review; (B) the date a state created unconstitutional impediment that previously prevented the filing of the petition is removed; (C) the date a newly retroactive constitutional right is recognized by the Supreme Court; or, (D) the date a factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). The one-year limitations period is tolled while a properly filed application for state postconviction or other collateral proceeding is pending in the state court. 28 U.S.C. § 2244(d)(2).

The petition in this case is governed by § 2244(d)(1)(A), and more specifically, the date when Joyner's period for further direct review expired. Sections (B) and (C) are clearly inapplicable and need not be discussed further. As to Section (D), the factual predicate of Joyner's claims were available to Joyner before the completion of his direct appeal. Joyner points out that he did not learn about the *Dunn* settlement until multiple years after the completion of his direct appeal. However, actual knowledge and understanding of a claim is

8

irrelevant—the controlling date is when he could have discovered the factual predicate through due diligence. *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). Joyner was aware of the facts supporting his claims when they occurred—he knew that he had been held for multiple days following his arrest without being presented to a judge and that he was presented for identification to eyewitnesses without the presence of an attorney. These events all occurred prior to the expiration of his direct appeal period. Section § 2244(d)(1)(A) thus controls the statute of limitations calculation and the relevant date is the date when his conviction became final by direct review

The last event in Joyner's direct appeal proceedings was the denial of his motion for reduction of sentence by the state trial court on June 29, 2006. (Dkt. No. 14-3 at 83.) Joyner had 30 days to bring his appeal. *See* Ill. S. Ct. Rule 604(d). He took no action. Thus, his direct appeal period ended for purposes of 28 U.S.C. § 2244(d)(1)(A) on July 29, 2006. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Joyner had one year from July 29, 2006 to file his federal habeas corpus petition. But then, Joyner filed his joint post-conviction and relief from judgment motion on June 26, 2007, thereby tolling the limitations period from that date under 28 U.S.C. § 2244(d)(2). (Dkt. No. 14-3 at 150.) Thus, 332 days counted against the statute of limitations between the completion of Joyner's direct appeal and the beginning of the tolling period. The trial court denied the motion on July 6, 2007. (Dkt. No. 14-3 at 159.).

Joyner did not appeal the denial. It is an open question in the Seventh Circuit whether the time period for bringing an appeal following the denial of a collateral proceeding tolls the statute of limitations. *See Adamczyk v. Sullivan*, No. 18 C 1858, 2019 WL 6903385, at *2 (N.D. Ill. Apr. 9, 2019). Assuming the time period for bringing an appeal continues the tolling, the tolling

9

period ended on August 5, 2007. As 332 days already counted against the statute of limitations period, the limitations period for Joyner expired on September 7, 2007. As a result, Joyner's present habeas corpus petition, filed almost seven years later in March 2014, is untimely. Moreover, the later-filed proceedings in the state court (*i.e.*, the 2011 motion for relief from judgment and the 2012 state habeas corpus petition) have no effect on the statute of limitations calculation. The federal limitations period expired in 2007, meaning that any action taken in state court in 2011 or 2012 is irrelevant. *Dolis v. Chambers*, 454 F.3d 721, 723 (7th Cir. 2006).

Joyner responds that the statute of limitations should be equitably tolled because he suffers from a mental illness. To justify tolling the statute of limitations, Joyner has the burden of demonstrating that: (1) he diligently pursued his rights; and, (2) some extraordinary circumstance stood in his way preventing a timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Mayberry v. Dittmann*, 904 F.3d 525, 529-30 (7th Cir. 2018). "[M]ental illness may toll a statute of limitations[] 'only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.'" *Mayberry*, 904 F.3d at 530 (quoting *Obriecht v. Foster*, 727 F.3d 744, 750–51 (7th Cir. 2013); *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)).

The record is inconclusive as to whether Joyner suffers from a mental illness. In 2005, Joyner was examined at the outset of his criminal case by a staff psychiatrist for the Circuit Court of Cook County's Forensic Clinical Services. The psychiatrist concluded that Joyner was "attempt[ing]to malinger mental illness." (Dkt. No. 14-3 at 34.) Subsequent examinations during Joyner's incarceration in the Illinois Department of Corrections ("IDOC") concluded that he had no mental illness, and that his only notable issue was addiction to illegal drugs. (Dkt. No. 10 at

10.) IDOC reports observe that Joyner was "alert and oriented," with "[n]o delusions, hallucinations or formal thought disorder;" his "thought processes were organized and goal directed;" "[h]is memory for immediate, recent and remote events appeared unimpaired;" and "[h]is speech was clear and coherent." (*Id*.) The reports also state that Joyner was attempting to publish a book he had written. (*Id*. at 21, 23, 24.) Nonetheless, some material in the record suggests that Joyner does have a mental illness. Joyner was prescribed a number of psychotropic medications while at the Cook County Jail, but the pretrial psychiatrist also noted that "it is not clear that he requires these in order to maintain his fitness for trial." (Dkt. No. 14-3 at 64.) There are also health evaluations from the IDOC diagnosing Joyner with either paranoid schizophrenia or schizoaffective disorder. (Dkt. No. 10 at 6–9.)

The Court need not resolve the question of whether Joyner suffers from schizophrenia or a similar disorder, or is a malingerer, as he cannot meet the required standard for equitable tolling. There is no evidence suggesting that any alleged mental illness impacted Joyner's ability to manage his affairs such that he could not assert his legal rights. *Mayberry*, 904 F.3d at 530. Notably, Joyner litigated matters *pro se* in the state courts in both 2007 and 2011. (Dkt. No. 14-2 at 39; Dkt. No. 14-3 at 150.) He also successfully submitted the class action claim form to receive his settlement payment in the *Dunn* case and attempted to find publishers for a book he wrote while incarcerated. These actions indicate that Joyner was not suffering from a mental illness that prevented him from managing his affairs such that he could not understand his legal rights and take action upon them. *Mayberry*, 904 F.3d at 530. The Court thus finds that Joyner is not entitled to equitable tolling.

### III. Certificate of Appealability and Notice of Appeal Rights

As explained above, Joyner's habeas corpus petition fails on the merits in addition to being barred by the statute of limitations. The case is therefore denied. The Court further declines to issue a certificate of appealability, as Joyner has not made a substantial showing of the denial of a constitutional right or that reasonable jurists would debate this Court's resolution of his claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Joyner is advised that this is a final decision ending his case in this Court. If he wishes to appeal, Joyner must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Joyner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of judgment. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

**CONCLUSION**

For the reasons discussed above, Joyner's habeas corpus petition (Dkt. No. 7.) is denied on the merits. Joyner's motion for status report (Dkt. No. 27) is granted. Joyner is advised that this Memorandum Opinion and Order brings the case up to date. Joyner's recently filed motions to be released on bond pending resolution of this matter (Dkt. Nos. 29, 32) and any other pending motions are denied as moot.

ENTERED:

Dated: April 17, 2020

Andrea R. Wood
United States District Judge